In re Fred J. WINES, Debtor.

Marian WINES, Plaintiff,

v.

Fred J. WINES, Defendant.

Bankruptcy No. 89–14719–BKC–SMW.
Adv. No. 89–0578–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

May 22, 1990.

Arthur S. Weitzner, Miami, Fla., for debtor.

Brian K. Goodkind, Miami, Fla., for creditor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE having come before the Court upon the complaint of Marian Wines (the "creditor") against Fred J. Wines (the "debtor"), pursuant to 11 U.S.C. § 727(a)(2)(A), and (a)(4)(A), and upon the debtor's counterclaims, and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the Following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 157(a), (b) and § 1334(b). This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(J) and the district court's general order of reference.

The debtor was a majority shareholder of two corporations which filed for bankruptcy. The creditor is the former wife of the debtor who, pursuant to a final judgement of dissolution of marriage, was awarded 500 shares of stock from one of the debtor's corporation. In 1983, the creditor sold her shares of the stock to the debtor's holding company. The stock re-purchase was partially financed by a note given by the holding company, in favor of the creditor, in the amount of $1,230,000.00, and secured through a first mortgage on real property owned by another of the debtor's corporation. In January, 1987, the debtor was unable to make that months payment to the creditor pursuant to the stock re-purchase agreement. Consequently, the debtor requested an extension of time to make the January payment. The parties reached an agreement whereby the debtor would personally guarantee the January payment owed by the debtor's holding company to the creditor if the creditor agreed to extend the payment due date.

Thereafter, two of the debtor's corporations filed petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota. One of the debtor's corporations filed a liquidating plan and the second filed a plan of reorganization which was confirmed. Pursuant to the plan of reorganization filed, the debtor was given the right to acquire 26% of the newly issued stock. However, under the subsequently

amended plan of reorganization, the debtor transferred his right to acquire the newly issued stock to his present wife. The creditor filed a proof of claim against the second corporation which had given the first mortgage as security on the stock repurchase. Eventually, the creditor and the debtor's corporation reached an agreement which was approved by the bankruptcy court, whereby the creditor was partially paid for the stock sold to the holding company and was allowed an unsecured subordinated claim against the corporation for the outstanding amount owed on the stock re-purchase. The agreement only affected the rights of the corporation which had provided the collateral and did not involve the debtor individually. In July, 1989, the Minnesota Court confirmed the amended plan of reorganization for the debtor's second corporation.

In September, 1989, the debtor filed a petition under Chapter 7 of the Bankruptcy Code in the Southern District of Florida. The creditor filed this adversary proceeding seeking to deny the debtor's discharge under 11 U.S.C. § 727(a)(2)(A) on the grounds that the debtor fraudulently transferred his right to acquire 26% of the stock in one of his reorganized corporations to his present wife without consideration one year before the date of the filing of the petition. The creditor also objected to the discharge of the debtor pursuant to 11 U.S.C. § 727(a)(4)(A) on the grounds that the debtor had failed to list a claim, which he had filed against another of his corporations, in the amount of $361,821.00 as an asset on his chapter 7 schedules. In turn, the debtor objected to two proof of claims filed by the creditor; one for delinquent alimony payments and one based upon the debtor's personal guaranty of his holding companies' January payment to the creditor.

In count I of the complaint the creditor seeks to deny the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A). Under 11 U.S.C. § 727(a)(2)(A) a debtor is entitled to a discharge unless, "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated or concealed ... property of the debtor, within one year before the filing of the petition." 11 U.S.C. § 727(a)(2)(A). Additionally, the burden is on the objecting party to prove that the debtor's discharge should be denied by clear and convincing evidence. *In re Cutignola*, 87 B.R. 702, 706 (Bankr.S.D.Fla. 1988). In order to deny a discharge under § 727(a)(2), the objecting party must prove that a transfer was made with actual intent to defraud a creditor rather than constructive intent. *In re Mart*, 87 B.R. 206 (Bankr.S.D.Fla.1988). Furthermore, actions under § 727(a)(2)(A) are limited to those transfers of property in which the debtor has a direct proprietary interest and not a derivative interest. *MCORP Management Solutions, Inc. v. C.A. Thurman (In re Thurman)*, 901 F.2d 839 (10th Cir.1990).

The creditor argues that the transfer by the debtor of his right to acquire 26% of the reorganized corporation to his present wife was an attempt to defraud his creditors. The Court finds that there has in fact been no transfer of stock between the parties. Instead, pursuant to the amended plan of reorganization, the debtor's wife will have an opportunity to purchase a 26% interest in the reorganized company if the stock is reissued. These facts were known to all interested parties, including the creditor, during the course of the corporate bankruptcy case. The amended plan of reorganization was approved by the creditors and confirmed by the Minnesota bankruptcy court. The Court finds that the interest held by the debtor can only be classified as a derivative interest at best, whereas § 727(a)(2)(A) is applicable only in those cases where the debtor has a direct proprietary interest which he/she attempts to transfer in order to defraud creditors. *See MCORP Management Solutions, Inc. v. C.A. Thurman (In re Thurman)*, 901 F.2d 839 (10th Cir.1990). Therefore, the Court finds that the creditor has not proven by clear and convincing evidence that the debtor intended to defraud his creditors by transferring his interest. Furthermore, the Court finds that the alleged transfer of interest oc-

curred during the pendency of the corporate bankruptcy case in Minnesota, therefore, any objections to that transaction are to be ventilated in that forum.

▇▇ In count II of the complaint, the creditor seeks a denial of the debtor's discharge under 11 U.S.C. § 727(a)(4)(A). In order to deny a discharge under § 727(a)(4)(A), the trustee or creditor must prove that the debtor "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4). The purpose of § 727(a)(4)(A) is to insure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examinations or investigations to determine whether the information is true. *In re Watkins,* 84 B.R. 246 (Bankr.S.D.Fla.1988). A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the question is answered completely in all respects. *In re Burke,* 83 B.R. 716 (Bankr.D.N.D.1988); *In re Dias,* 95 B.R. 419 (Bankr.N.D.Tex.1988). The creditor's objection in this regard is predicated on the alleged failure of the debtor to list a pending claim he has against one of his corporations, presently in bankruptcy, in the amount of $361,820.00 as an asset in his chapter 7 schedules. At the trial of this case, the debtor testified that he had in fact listed the claim in the schedules but that he had listed the amount of the claim as being only $12,000.00. The debtor provided this figure based on his assessment of the distribution to unsecured creditors in the corporate bankruptcy proceedings. Despite the fact that the creditor objected to the undervaluation of the debtor's claim against the corporation, the creditor presented no concrete evidence as to the exact value of the claim at the time the debtor filed his individual petition. Undervaluation of assets which are otherwise properly listed in a debtor's schedules is not sufficient to warrant a denial of discharge. *In re Blum,* 41 B.R. 816 (Bankr.S.D.Fla.1984). Furthermore, any benefit the debtor may receive from the reorganized corporation will pass to the trustee in this case and not to the debtor personally.

Therefore, this Court finds that the debtor did not make a false oath or account so as to warrant the denial of his discharge under 11 U.S.C. § 727(a)(4)(A).

▇▇ The debtor has filed two counterclaims objecting to the filing by the creditor of two proof of claims and her status as a bona fide creditor of this estate. The debtor argues that the creditor is not a creditor of this estate by virtue of the agreement and releases entered between the parties during the pendency of the debtor's corporate bankruptcy cases. However, pursuant to a "Memorandum Agreement" entered between the parties in January, 1987, the debtor agreed to unconditionally guarantee the January payment of his corporations debt to the creditor as reflected by the promissory note dated January, 1985. Thereafter, when the debtor's corporation filed for bankruptcy, the parties entered a new agreement whereby the creditor was partially paid for the corporate indebtedness and was allowed an unsecured subordinated claim against the corporation for the amount still outstanding. The debtor contends that the settlement agreement between the debtor's corporation and the creditor releases him as guarantor.

The Court finds that the obligation of the debtor as an "unconditional guarantor" of the corporations debt to the creditor is not affected by the agreement previously entered in by the parties in the corporate bankruptcy case. The debtor as guarantor remains liable on the outstanding balanced owed, for the January 1987 payment which he guaranteed, subject to credit for the amounts already paid to the creditor by the corporation. *See U.S. v. Stribling Flying Service,* 734 F.2d 221 (5th Cir.1984).

▇▇ Secondly, the debtor request that the Court strike the creditor's alimony claim. However, the Court finds that the striking of the creditor's claim would be improper. An alimony claim, regardless of the amount, is excepted from discharge under 11 U.S.C. § 523(a)(5). Therefore, once the final determination is made by the State of Minnesota, 4th Judicial District

Family Court Division, as to the amount the debtor must pay as alimony to the creditor that amount will be excepted from discharge by this Court pursuant to 11 U.S.C. § 523(a)(5).

A separate Final Judgment of even date has been entered in conformity with the Findings of Fact and Conclusions of Law.

## FINAL JUDGEMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is hereby,

ORDERED AND ADJUDGED as follows:

1. Count I and II of the complaint are denied and the debtor is entitled to a discharge under 11 U.S.C. § 727(a)(3).

2. The debtor remains liable to the creditor for the outstanding amount owed on the January 1987 payment, which he unconditionally guaranteed on behalf of his corporation, subject to credit for the amounts already paid to the creditor by the corporation.

3. The alimony claim filed by the creditor is valid and the amount, once it is determined by the Family Court in Minnesota, will be excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).