In re RaeJean **BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; World Plus, Inc., an Alaska corporation; and, Atlantic Pacific Funding Corp., a Nevada corporation, Debtors.**

**Larry D. COMPTON, Plaintiffs,**

**v.**

**RaeJean BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus, Defendants.**

**Bankruptcy Nos. F95–00897– HAR, 96–4045. Adversary No. 95–00897–005–HAR.**

United States Bankruptcy Court, D. Alaska.

May 21, 1998.

James D. DeWitt, Guess & Rudd, Fairbanks, Alaska, for plaintiffs.

RaeJean Bonham, Fairbanks, Alaska, pro se.

## MEMORANDUM DECISION GRANTING TRUSTEE SUMMARY JUDGMENT DENYING DISCHARGE OF DEBTOR UNDER 11 USC § 727(a)(2)(A)

HERBERT A. ROSS, Bankruptcy Judge.

A hearing was held on May 21, 1998, regarding the summary judgment motion filed by the trustee seeking to deny the discharge of RaeJean Bonham. (Docket Entry 20, filed January 28, 1998). At the hearing, I orally granted summary judgment to the trustee denying RaeJean Bonham's discharge.

The reason for this written decision is to explain my ruling that there is a legal basis to deny RaeJean Bonham's discharge under 11 U.S.C. § 727(a)(2)(A) for transfers made by World Plus, Inc. (WPI) and Atlantic Pacific Funding Corp. (APFC), as opposed to Bonham, herself. Most of the investing, especially in the period immediately before the bankruptcy, was with WPI and APFC, and WPI and APFC made most of the transfers, not Bonham. I conclude, nonetheless, that I have authority to deny Bonham's discharge pursuant to § 727(a)(2)(A) for transfers made by WPI and APFC under the facts of this case. This decision is not intended to supercede the oral ruling in which I also found that Bonham's discharge should be denied under other subsections of 727(a).

Section 727(a)(2)(A) provides:

A court shall grant a debtor a discharge unless—

(2) *the debtor*, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be, transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; . . . [emphasis added]

RaeJean Bonham operated a Ponzi scheme which resulted in creditors filing approximately $40 million of unsecured claims for unrepaid investments, mostly with WPI or APFC. The trustee's extensive forensic analysis, and the court's own observation at numerous hearings in which Ms. Bonham testified, support the conclusion that Bonham operated a Ponzi scheme. Even without Mr. Compton's analysis or my own observation, U.S. District Judge H. Russel Holland reached the same conclusion in a federal district court action by the SEC against Bonham, WPI and APFC, in which Bonham actively participated.[1] I must give collateral estoppel effect to this ruling.[2]

 A Ponzi scheme involves the continual securing of new investors to pay profits (usually exorbitant) to earlier investors, instead of from the operations of a legitimate business, as the investors are led to believe.[3] Payments from a Ponzi scheme within one year of the petition date by a debtor in bankruptcy are deemed to be fraudulent conveyances because they defraud creditors under 11 U.S.C. § 548(a)(1).[4] Thus, the same payments which defraud creditors within one year of the bankruptcy petition also may qualify to deny a discharge for defrauding creditors under § 727(a)(2)(A).

RaeJean Bonham disregarded the corporate formalities in operating both WPI and APFC and used the corporations as her own pocket book. She used them for an illegal and fraudulent purpose—to operate a Ponzi scheme. She transferred money freely and without rhyme or reason between the corporations and herself. Judge Holland found that she used the corporations to evade the securities laws of the United States,[5] and she violated the analogous securities laws of Alaska as well.

 The corporate veil of WPI and APFC should be pierced and RaeJean Bonham declared the alter ego of WPI and APFC under these facts. In Alaska, a person who uses a corporation to commit fraud or engage in criminal activity should not be permitted to hide behind the corporate veil. Rather, the person should be treated as the corporation's alter ego.[6]

The question is, can RaeJean Bonham, the individual debtor, be denied a discharge under § 727(a)(2)(A), which requires transfer of *property of the debtor*, where the transfers were in fact *property of her alter ego corporations*, WPI and APFC? Although there is not much case law on this point, the cases that do discuss the subject generally hold or infer that the court does have such authority. For example, in *In re Gherman*, the individual debtor argued that money lost through his embezzlement was property of his closely held corporation, and not him, and that § 727(a)(2)(A) did not provide for denial of a discharge in that circumstance. The court nonetheless denied discharge and said: "All of the fraudulently transferred money came from FIP [debtor's closely held corporation]. FIP, Gherman's alter ego, clearly had both the legal title to and possession of the money."[7]

---

1. *See,* Plaintiff's Exhibit AB, a copy of *Securities and Exchange Comm. v RaeJean Bonham, World Plus, Inc., and Atlantic Pacific Funding Corp.,* No F96–0023 CIV HRH, *Order Granting Plaintiff Securities and Exchange Commission's Application for Entry of Default Judgment and Motion for Summary Judgment and Final Judgment of Permanent Injunction Against Defendants RaeJean S. Bonham, World Plus, Inc. and Atlantic Pacific Funding Corporation,* by the Hon. H. Russel Holland, filed on November 26, 1997, at pages 2–3.

2. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) (dealing with dischargeability, but equally applicable to dis-charge cases); *In re Chaplin,* 179 B.R. 123, 126 (Bankr.E.D.Wis.1995) (a discharge case).

3. *In re Agricultural Research and Technology Group, Inc.,* 916 F.2d 528, 531 (9th Cir.1990).

4. *Id.* at 534.

5. *See* footnote 1 at pages 116–117 and footnote 2 regarding the federal securities violations.

6. *Elliott v. Brown,* 569 P.2d 1323, 1326 (Alaska 1977).

7. *In re Gherman,* 103 B.R. 326, 331 (Bankr. M.D.Fla.1989).

Finally, even if I am mistaken in my alter ego analysis, WPI and APFC were disenfranchised by their respective states, Alaska for WPI and APFC by Nevada, months before the December 1995, bankruptcy in this case. During that hiatus, Ms. Bonham continued to operate her Ponzi scheme without an effective corporation to shield her. Thus, even without the alter ego theory, she has transferred property to hinder her creditors.

The discharge of the debtor, RaeJean S. Bonham, should be denied under 727(a)(2)(A). A separate judgment will be entered.